UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**11 CIV 2438**

------------------------------------------------------------------X

OWEN IGLESIAS,

                        Plaintiff,

      -against-

BRIAN FISCHER, individually and in his capacity as
Commissioner of New York State Department of
Correctional Services, LUCIEN J. LECLAIRE, JR.,
individually and in his capacity as Deputy Commissioner of
New York State Department of Correctional Services,
GEORGE BARTLETT, individually and in his capacity as
policymaker of New York State Department of Correctional
Services, "JOHN DOE 1", individually and in his/her
capacity as New York State Department of Correctional
Services Americans with Disabilities Act Coordinator,
ADA PEREZ, individually and in her capacity as
Superintendant of Downstate Correctional Facility, "JOHN
DOE 2", individually and in his/her official capacity as
Chief Medical Officer of Downstate Correctional Facility,
"JOHN DOE 3", individually and in his/her capacity as
Americans with Disabilities Act Coordinator of Downstate
Correctional Facility, CORRECTION OFFICER "JOHN"
SALAZAR, individually and in his official capacity,
LIEUTENANT RICHARD BUYS, individually and in his
official capacity as Disciplinary Hearing Officer of
Downstate Correctional Facility, CORRECTION OFFICER
"JOHN" FLORIO, individually and in his official capacity,
LIEUTENANT "JOHN" QUACKENBUSH, individually
and in his official capacity as Disciplinary Hearing Officer
of Downstate Correctional Facility, and "JOHN DOES 4-
10", individually and in their official capacity as Inmate
Grievance Resolution Committee Members of Downstate
Correctional Facility,

                        Defendants.

------------------------------------------------------------------X

Docket No.

**VERIFIED COMPLAINT**

Jury Trial Demanded



RECEIVE
APR 1 1 2011
U.S.D.C. S.D. N.Y.
CASHIERS

       Plaintiff, **OWEN IGLESIAS,** by his attorneys, LAZAROWITZ & MANGANILLO,

LLP, complaining of the defendants, hereinafter states and alleges as follows upon information

and belief:

## PRELIMINARY STATEMENT

1.     Plaintiff brings this action seeking declaratory and injunctive relief and damages against the defendants to redress violations of his constitutional rights resulting from the creation, adoption, promulgation and application of the defendants' directives, policies, rules, regulations, customs and/or practices concerning urinalysis testing of prisoners within the custody and control of the New York State Department of Correctional Services (hereinafter referred to as "DOCS"), as well as said defendants' violative disciplinary procedures, determinations, and punishment of those prisoners deemed to have failed a urinalysis test.

2.     Plaintiff seeks an order declaring unconstitutional Defendants' directives, policies, rules, regulations, customs and/or practices of deeming a prisoner's physical disability which prevents him from providing a urine specimen for urinalysis testing within the confines, methodology and time parameters set forth in DOCS Directive #4937 equivalent to a positive urinalysis result, thereby subjecting the plaintiff, and those prisoners similarly situated, to disciplinary action and punishment equivalent to prisoners who were able to and did provide a specimen which yielded a positive finding.

3.     The defendants' directives, policies, rules, regulations, customs and practices violate those rights of the plaintiff that are secured by the Civil Rights Act of 1871, 42 U.S.C. §1983 et seq., the Fourth, Fifth, Eighth and Fourteenth Amendments to the Constitution of the United States, the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

4.     Additionally, Plaintiff asserts state law tort claims for violating the New York State Human Rights Law, the due process clause of the New York Constitution, negligent hiring, training, supervision and retention; intentional and negligent infliction of emotional distress; and

prima facie tort.

## JURISDICTION AND VENUE

5.      Plaintiff seeks damages from Defendants under the Civil Rights Act of 1871, 42

U.S.C. §1983 et seq., the Fourth, Eighth and Fourteenth Amendments to the Constitution of the

United States, the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq., and Section 504

of the Rehabilitation Act, 29 U.S.C. §794.

6.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331 and 1343(a)(3)

and (4) and the aforesaid statutory and constitutional provisions.

7.      Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over claims

which arise under the relevant provisions of New York state law.

8.      This action is brought in accord with 42 U.S.C. §1997.

9.      Plaintiff's claim for attorneys' fees and costs is predicated upon 42 U.S.C.

§12205; 28 C.F.R. §35.175 (for claims arising under the ADA); 29 U.S.C. §794 (for claims

arising under the Rehabilitation Act of 1973); 42 U.S.C. § 1988 (for all other federal statutory

claims); and N.Y. C.P.L.R. Art. 86 (for pendent claims arising under state law).

10.     Plaintiff seeks permanent injunctive relief pursuant to Fed. R. Civ. P. 65.

11.     Venue is appropriate in this Court pursuant to 28 U.S.C. §1391(b)(2), as a

substantial part of the events or omissions giving rise to the claim occurred within this judicial

district.

## PARTIES

12.     That at all times mentioned herein, the plaintiff was and remains a resident of the

State of New York, confined to the custody and control of the New York State Department of

Correctional Services ("DOCS"), its agents, servants and/or employees, and imprisoned at

Downstate Correctional Facility, located at 121 Red Schoolhouse Road, Fishkill, New York.

13. At all times mentioned herein, Plaintiff has physical impairments that substantially limit one or more of his "major life activities", as that term is defined by the Americans with Disabilities Act, 42 USC §12102.

14. At all times mentioned herein, Plaintiff is an "individual with disabilities", as that term is defined in Section 504 of the Rehabilitation Act of 1973, 29 USC §794, and the Americans with Disabilities Act, 42 U.S.C. § 12102.

15. At all times mentioned herein, Plaintiff, and others similarly situated, were the subject of discrimination by the defendants because of their physical disabilities.

16. In December 2008, Plaintiff was diagnosed with a right seminoma, requiring orchiectomy of his right testicle and approximately twenty-seven (27) radiation treatment sessions.

17. At all times mentioned herein, Plaintiff also suffered from hernias, requiring two (2) surgeries, chronic kidney stones and renal abscess.

18. As a result of the foregoing medical conditions, Plaintiff suffers a physical impairment and disability substantially limiting his ability to urinate and move his bowels.

19. At all times mentioned herein, Defendant, BRIAN FISCHER (hereinafter "Commissioner Fischer"), was and remains the Commissioner of DOCS, having been duly appointed by the Governor of the State of New York.

20. At all times mentioned herein, Commissioner Fischer operated, managed, supervised, directed and/or controlled the various DOCS prisons of the State of New York and, more specifically, Downstate Correctional Facility.

21. At all times mentioned herein, Commissioner Fischer was acting individually

and/or in his official capacity as the Commissioner of DOCS and as such established, approved, promulgated, implemented, applied, oversaw and/or enforced policies, practices, procedures and directives, either formally or by custom, that interfered with and/or failed to protect the rights of the plaintiff, and was responsible for the hiring, employment, training, supervision and conduct of the correction officers and employees of DOCS and/or Downstate Correctional Facility who interfered with and/or failed to protect the rights of the plaintiff.

22. At all times mentioned herein, Defendant, LUCIEN J. LECLAIRE, JR. (hereinafter "Deputy Commissioner Leclaire"), was and remains the Deputy Commissioner of DOCS, having been duly appointed by the Governor of the State of New York.

23. At all times mentioned herein, Deputy Commissioner Leclaire operated, managed, supervised, directed and/or controlled the various DOCS prisons of the State of New York and, more specifically, Downstate Correctional Facility.

24. At all times mentioned herein, Deputy Commissioner Leclaire was acting individually and/or in his official capacity as the Deputy Commissioner of DOCS and as such established, approved, promulgated, implemented, applied, oversaw and/or enforced policies, practices, procedures and directives, either formally or by custom, that interfered with and/or failed to protect the rights of the plaintiff, and was responsible for the hiring, employment, training, supervision and conduct of the correction officers and employees of DOCS and/or Downstate Correctional Facility who interfered with and/or failed to protect the rights of the plaintiff.

25. At all times mentioned herein, Defendant, GEORGE BARTLETT (hereinafter "Bartlett"), was acting individually and/or in his official capacity as a policymaker of DOCS and as such established, approved, promulgated, implemented, applied, oversaw and/or enforced

policies, practices, procedures and directives, either formally or by custom, that interfered with and/or failed to protect the rights of the plaintiff, and was responsible for the hiring, employment, training, supervision and conduct of the correction officers and employees of DOCS and/or Downstate Correctional Facility who interfered with and/or failed to protect the rights of the plaintiff.

26.     At all times mentioned herein, Defendant, JOHN DOE 1, was acting individually and/or in his/her official capacity as DOCS' Americans with Disabilities Act Coordinator.  As such, Defendant, JOHN DOE 1 (hereinafter "DOCS ADA Coordinator"), established, approved, promulgated, implemented, applied, oversaw and/or enforced policies, practices, procedures and directives, either formally or by custom, that interfered with and/or failed to protect the rights of the plaintiff, and was responsible for the hiring, employment, training, supervision and conduct of the correction officers and employees of DOCS and/or Downstate Correctional Facility who interfered with and/or failed to protect the rights of the plaintiff.

27.     At all times mentioned herein, Defendant, ADA PEREZ (hereinafter "Superintendant Perez"), operated, managed, supervised, directed and/or controlled Downstate Correctional Facility.

28.     At all times mentioned herein, Superintendant Perez was acting individually and/or in her official capacity as the Superintendant of Downstate Correctional Facility and as such established, approved, promulgated, implemented, applied, oversaw and/or enforced policies, practices, procedures and directives, either formally or by custom, that interfered with and/or failed to protect the rights of the plaintiff, and was responsible for the hiring, employment, training, supervision and conduct of the correction officers and employees of Downstate Correctional Facility who interfered with and/or failed to protect the rights of the plaintiff.

29.     At all times mentioned herein, Defendant, JOHN DOE 2, was acting individually and/or in his/her official capacity as the Chief Medical Officer of Downstate Correctional Facility.  As such, Defendant, JOHN DOE 2 (hereinafter "Chief Medical Officer"), established, approved, promulgated, implemented, applied, oversaw and/or enforced policies, practices, procedures and directives, either formally or by custom, that interfered with and/or failed to protect the rights of the plaintiff, and was responsible for the hiring, employment, training, supervision and conduct of the correction officers and employees of Downstate Correctional Facility who interfered with and/or failed to protect the rights of the plaintiff.

30.     At all times mentioned herein, Defendant, JOHN DOE 3, was acting individually and/or in his/her official capacity as the Americans with Disabilities Act Coordinator of Downstate Correctional Facility.  As such, Defendant, JOHN DOE 3 (hereinafter "Downstate ADA Coordinator"), established, approved, promulgated, implemented, applied, oversaw and/or enforced policies, practices, procedures and directives, either formally or by custom, that interfered with and/or failed to protect the rights of the plaintiff, and was responsible for the hiring, employment, training, supervision and conduct of the correction officers and employees of Downstate Correctional Facility who interfered with and/or failed to protect the rights of the plaintiff.

31.     At all times mentioned herein, Defendants, CORRECTION OFFICER "JOHN" SALAZAR (hereinafter "CO Salazar") and CORRECTION OFFICER "JOHN" FLORIO (hereinafter "CO Florio"), were correction officers employed by DOCS and/or Downstate Correctional Facility, were responsible for the custody, control and care of the plaintiff, and were indifferent to and participated in the mistreatment of Plaintiff described below, individually and/or in their official capacities.

32.    At all times mentioned herein, Defendants, LIEUTENANT RICHARD BUYS (hereinafter "Lt. Buys") and LIEUTENANT "JOHN" QUACKENBUSH (hereinafter "Lt. Quackenbush"), were disciplinary hearing officers employed by DOCS and/or Downstate Correctional Facility, were responsible for the custody, control and care of the plaintiff, and were indifferent to and participated in the mistreatment of Plaintiff described below, individually and/or in their official capacities.

33.    At all times mentioned herein, Defendants, JOHN DOES 4-10 (hereinafter "IGRC Members"), were Inmate Grievance Resolution Committee members at Downstate Correctional Facility, were responsible for the custody and care of the plaintiff, and were indifferent to and participated in the mistreatment of Plaintiff described below, individually and/or in their official capacities.  The identities of the IGRC Members are not presently known, but they are believed to be officers and/or employees of DOCS and Downstate Correctional Facility, endowed and bestowed with various ranks and appointments upon them by the State of New York and/or DOCS, and are sued herein individually and in their official capacities.

34.    The defendants, individually and in conspiracy with one another, engaged in the conduct alleged herein under color of law of the State of New York.

35.    The defendants knowingly participated or acquiesced in, contributed to, encouraged, implicitly authorized, or approved the conduct alleged herein, individually and in their official capacities with DOCS and/or Downstate Correctional Facility.

36.    The offenses alleged herein resulted from the failure of DOCS and the supervisory officials named herein to employ qualified persons for positions of authority, and/or to properly or conscientiously train and supervise the conduct of such persons after their employment, and/or to promulgate appropriate operating policies and procedures either formally

or by custom to protect the constitutional rights of the plaintiff, and/or to design and implement urinalysis testing protocols and disciplinary procedures in a manner that protected inmates like the plaintiff from harm.

## STATEMENT OF FACTS

37.　　On or about September 24, 2009, Plaintiff was received into the custody and control of the defendants at Downstate Correctional Facility.

38.　　At the time of Plaintiff's receipt and admission to Downstate Correctional Facility, Defendant(s) failed to fully and properly conduct the requisite admissions procedures and disability and medical review in order to appropriately classify Plaintiff and put officers and staff on notice of Plaintiff's disability.

39.　　At all times mentioned herein, Defendant(s), their agents, servants and/or employees, authorized, prescribed, issued and provided Plaintiff with several medications that have the known side-effect of causing difficulty urinating.

40.　　On or about September 28, 2009, Plaintiff was ordered by CO Salazar to submit a urine specimen for urinalysis testing, purportedly based upon the random selection process; however, due to his disability, Plaintiff was unable to provide a urine sample in the time afforded by CO Salazar and informed CO Salazar that same was due to his disability[1]. Nevertheless, CO Salazar issued an Inmate Misbehavior Report, citing Plaintiff for violating DOCS' Standards of Inmate Behavior All Institutions, Institutional Rules of Conduct 106.10 (refusal to obey a direct order) and 180.14 (failure to provide a urine sample when ordered to do so).

41.　　Plaintiff never refused to provide a urine sample. In fact, Plaintiff drank

---

[1] Within the Inmate Misbehavior Report, CO Salazar has admitted that he provided Plaintiff with only one hour and fifty minutes (1:50) to provide a urine specimen. Pursuant to DOCS Directive 4937, IV(D)(4), CO Salazar was required to provide Plaintiff with three (3) hours to provide a urine specimen.

approximately twenty-four (24) ounces of water in an effort to provide the requested sample, and upon still being unable to do so, volunteered to be catheterized in order to extract a urine specimen. CO Salazar denied Plaintiff's request to be catheterized.

42.     Plaintiff's inability to produce a urine specimen at that time was solely due to his disability.

43.     Thereafter, on or about October 2-5, 2009, a Tier III superintendant hearing was held, upon which Lt. Buys found Plaintiff guilty of violating DOCS' Standards of Inmate Behavior All Institutions, Institutional Rules of Conduct 106.10 and 180.14. As a result of Lt. Buys' ruling, Plaintiff was assessed a five ($5.00) dollar disciplinary surcharge and penalized six (6) months in Special Housing Unit ("SHU"), one year loss of packages, one year loss of commissary, one year loss of phone, and one year loss of good time.

44.     On or about October 4, 2009, Plaintiff was transferred to SHU. On or about October 8, 2009, Plaintiff was released from SHU as a result of Plaintiff's successful appeal of Lt. Buys' ruling.

45.     Less than two weeks later, on or about October 19, 2009, Plaintiff was ordered by CO Florio to submit a urine specimen for urinalysis testing, purportedly based upon information supplied by a confidential informant. Due to his disability, Plaintiff was again unable to provide a urine sample in the time afforded by CO Florio and informed CO Florio that same was due to his disability. Plaintiff also informed CO Florio that he had the same problem providing a urine specimen to CO Salazar three (3) weeks earlier, for which he was cited, found guilty, and dismissed on appeal. Nevertheless, CO Florio issued an Inmate Misbehavior Report, citing Plaintiff for violating DOCS' Standards of Inmate Behavior All Institutions, Institutional Rules of Conduct 106.10 (refusal to obey a direct order) and 180.14 (failure to provide a urine sample

when ordered to do so).

46.     As with the prior incident, Plaintiff never refused to provide a urine sample.  In fact, Plaintiff drank approximately twenty-four (24) ounces of water in an effort to provide the requested sample, and upon still being unable to do so, volunteered to be catheterized in order to extract a urine specimen.  CO Florio denied Plaintiff's request to be catheterized.

47.     Plaintiff's inability to produce a urine specimen at that time was solely due to his disability.

48.     Thereafter, on or about October 22-27, 2009, a Tier III superintendant hearing was held, upon which Lt. Quackenbush found Plaintiff guilty of violating DOCS' Standards of Inmate Behavior All Institutions, Institutional Rule of Conduct 180.14.  As a result of Lt. Quackenbush's ruling, Plaintiff was assessed a five ($5.00) dollar disciplinary surcharge and penalized sixty (60) days in SHU, sixty (60) days loss of packages, sixty (60) days loss of commissary, and sixty (60) days of phone.

49.     Thereafter, Plaintiff was transferred to SHU, where he remained until his release from DOCS' custody and control on or about December 18, 2009.

50.     At the aforementioned Tier III superintendant hearings, the defendant superintendant hearing officers improperly denied Plaintiff's request for witness testimony from his treating physician(s) and/or persons familiar with his disability and medical and medication history, and permitted unqualified individuals to testify against Plaintiff and render medical opinions regarding Plaintiff's medical condition and the effect of his medications on his ability to provide a urine specimen, and then relied upon said unqualified opinions to find Plaintiff guilty of the charged offenses, all in violation of Plaintiff's due process rights, DOCS Directive 4932, and 7 NYCRR Chapter V, Subchapters A and B.

51.     Plaintiff formally grieved, to the extent necessary and/or required, the aforesaid conduct with the IGRC Members; however, the IGRC Members informed the plaintiff that grievances filed with respect to the aforesaid conduct cannot be resolved through the inmate grievance program. Accordingly, Plaintiff has exhausted all administrative remedies.

52.     Plaintiff believes and, after reasonable discovery, will show that the aforesaid unconstitutional and discriminatory treatment of Plaintiff was the result of the defendants' policies, practices, procedures and directives, either written or unwritten, and that such policies, practices, procedures and directives were the "moving force" behind his injuries. Such practices constitute an arbitrary use of government power, and evince a total, intentional, deliberate and unreasonable disregard for, and indifference to, the lives and constitutional, statutory and common law rights of DOCS prisoners, including but not limited to the plaintiff, and the wholesale violations of those rights likely to result from the regular and systematic pursuit of such practices.

53.     Defendants' Directives 4932 and 4937, which provide no provision, modification or reasonable accommodation for disabled prisoners, but rather deem a prisoner's disability-caused inability to provide a urine specimen for urinalysis testing equivalent to a positive urinalysis result, thereby subjecting the plaintiff, and those prisoners similarly situated, to disciplinary action and punishment equivalent to prisoners who were able to and did provide a urine specimen which yielded a positive finding, violates the plaintiff's rights secured by the Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States, the Civil Rights Act of 1871, 42 U.S.C. §1983 et seq., the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and directly and proximately damaged the plaintiff.

54.     It is clear from their pervasive and widespread application that the defendants drafted, approved, adopted, promulgated, implemented, enforced, oversaw and/or allowed to continue unconstitutional policies, practices or customs regarding the care and treatment of disabled prisoners such as the plaintiff, giving rise to the aforesaid claims.

55.     The defendants knew that the policies, practices, customs and directives described above existed within all DOCS prison facilities and, in particular, Downstate Correctional Facility.  Their failure to take measures to curb these discriminatory and abusive practices constitutes acquiescence in their known unlawful behavior and that of their subordinates.  The prevalence of these practices and general knowledge of their existence, and the failure of these defendants to take remedial action, despite the fact that same has been persistently brought to their attention, constitutes deliberate indifference to the rights of disabled prisoners in the defendants' custody and care, including the plaintiff.

56.     The aforesaid conduct has been a substantial factor in the continuation of such abuse and a proximate cause of the constitutional, common law and statutory violations alleged in this Complaint.

57.     Plaintiff's damages were preventable, and he is therefore entitled to recover for the wanton and unnecessary pain and suffering he endured and suffers still, and the injuries he sustained.  Also, Defendants' violations of Plaintiff's constitutional, common law and statutory rights were discriminatory, cruel, malicious, and evinced a total and reckless disregard for his disability, life, liberty, property and rights, thereby entitling Plaintiff to recover punitive damages from Defendants in order to deter such conduct in the future.

58.     As a result of the foregoing, Plaintiff, through Defendants' deliberate indifference and grossly negligent – if not reckless, intentional and/or malicious – conduct, was subjected to

cruel and unusual punishment, denied due process of law in violation, and discriminated against based upon a qualifying disability, all in violation of the Fourth, Eighth, and Fourteenth Amendments of the Constitution of the United States, the Civil Rights Act of 1871, 42 U.S.C. §1983 et seq., the Americans with Disabilities Act, 42 U.S.C. §§12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. §794.

59.     None of the defendants, their agents, servants and/or employees, took any action to intercede, investigate and/or halt the illegal policies, practices, procedures and directives challenged herein, nor did any of them promptly report same to their supervisors or other state or federal authorities.

60.     The aforesaid conduct was unnecessary, unreasonable, excessive, and served no legitimate penological interest.

61.     As a direct and proximate result of the defendants' policies, practices, procedures and directives and/or establishment, approval, promulgation, implementation, application, and/or oversight thereof, the plaintiff suffered physical, psychological and emotional injuries, pain and suffering, violation of due process of law, and violation of state and federal statutory, common law and constitutional rights, and is entitled to recover damages.

## FEDERAL CLAIMS

### FIRST CLAIM FOR RELIEF
### DISCRIMINATION UNDER THE AMERICANS WITH DISABILITIES ACT

62.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "61", inclusive, of this Complaint, as if same were fully set forth herein at length.

63.     Defendants are agents or officials of public entities and/or public entities, as those terms are defined under 42 U.S.C. §12131(1)(A) and (B) and U.S. Department of Justice

implementing regulations, 28 C.F.R. §35.104.

64.      Plaintiff is a "qualified individual with disability", as defined in the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12131(2), and 28 C.F.R. §35.104, who, with or without reasonable modifications to rules, policies, or practices, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by the defendants.

65.      As set forth above, Plaintiff has physical impairments that substantially limit one or more major life activities, including but not limited to urinating.  Plaintiff has records of having said impairment and/or he is or should have been regarded as having said impairment. As a state prisoner, Plaintiff meets the essential eligibility requirements for the receipt of reasonable accommodations in providing a urine specimen for urinalysis testing.

66.      Defendants discriminate(d) against physically disabled prisoners in general, and Plaintiff in particular, by denying reasonable accommodations in order to provide a urine specimen for urinalysis testing.

67.      Defendants discriminate(d) against Plaintiff on the basis of his disabilities by failing to make reasonable accommodations and/or modifications available to him, thereby denying him an equal opportunity to provide a urine specimen for urinalysis testing, in violation of Title II of the ADA and its implementing regulations, 42 U.S.C. §12132 and 28 C.F.R. §35.130(b)(7), as follows:

> a. The failure of DOCS, Commissioner Fischer, Deputy Commissioner Leclaire, Bartlett, the DOCS ADA Coordinator, Superintendant Perez, the Chief Medical Officer, and the Downstate ADA Coordinator to make available to Plaintiff appropriate medical services so that he may access the services of the medical

staff in order to procure a urine specimen for urinalysis testing in order to avoid the mandatory disciplinary consequences of failing to provide a timely specimen, in violation of Plaintiff's rights protected under the ADA.

b. The policy and practice of all defendants of subjecting individuals with physical disabilities who could not provide a timely urine specimen due to said disability to the same disciplinary procedures and sentences as a nondisabled individual who either refused to provide a specimen or provided a specimen which later tested positive places Plaintiff, and other similarly situated prisoners, at an increased risk of violating the defendants Standards of Inmate Behavior, in violation of Plaintiff's rights protected under the ADA.

c. The failure of the defendants to adequately train and supervise their employees and agents to recognize and accommodate individuals with physical disabilities who require either additional time and/or medical services in order to provide a urine specimen for urinalysis testing, in violation of Plaintiff's rights protected under the ADA.

d. The failure of the defendants to provide Plaintiff, and others similarly situated, with access to additional time and/or medical services in order to provide a urine specimen for urinalysis testing denies Plaintiff, and others similarly situated, equal opportunity and access to obtain the same result as provided to nondisabled prisoners.

e. Due to the defendants' failure to provide reasonable accommodations and/or modifications to address Plaintiff's disabilities, Plaintiff, and other similarly situated, face(d) a significantly increased risk of being unable, by reason of their

physical disabilities, to provide a urine specimen for urinalysis testing and/or avoid the disciplinary consequences of failing to timely do so.

68.    All defendants discriminate(d) against Plaintiff as follows:

   a.   Failing to afford Plaintiff benefits and services in a manner that is equal to others and failing to provide Plaintiff with these benefits and services in a manner that is as effective in affording equal opportunity to obtain the same result, gain the same benefit and reach the same level of achievement as that provided to others, in violation of 28 C.F.R. §35.130(b)(l)(ii)-(iii); and

   b.   Using methods of administration that subject Plaintiff to discrimination, in violation of 28 C.F.R. §35.130(b)(3)(i)-(iii) and (b)(8).

69.    As a result of the foregoing, Plaintiff is entitled to recover compensatory and punitive damages against the defendants for said violations, together with attorney's fees, costs, expert's fees, and disbursements.

## SECOND CLAIM FOR RELIEF
## DISCRIMINATION UNDER SECTION 504 OF THE REHABILITATION ACT

70.    Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "69", inclusive, of this Complaint, as if same were fully set forth herein at length.

71.    Defendants are recipients, or agents of recipients, of "federal financial assistance", as defined by Section 504 of the Rehabilitation Act and the implementing regulations promulgated by the U.S. Department of Justice, the U.S. Department of Health and Human Services, and the U.S. Department of Agriculture, thereby rendering them subject to Section 504 of the Rehabilitation Act, 29 U.S.C. §794(b)(l); 28 C.F.R. § 41.3(d), (e); 45 C.F.R. §84.3(f), (h); 7 C.F.R. §15b.3(f), (g).

72.     As set forth above, Plaintiff has a physical disability that substantially limits one or more of his major life activities, as defined under Section 504 of the Rehabilitation Act, 29 U.S.C. §705(9)(B), (20)(B).

73.     Plaintiff meets the essential eligibility requirements for the receipt of services and is therefore a "qualified handicapped person", as that term is defined in regulations implementing Section 504 of the Rehabilitation Act.

74.     As set forth above, Plaintiff has physical impairments that substantially limit one or more major life activities, including but not limited to urinating.  Plaintiff has records of having said impairment and/or he is or should have been regarded as having said impairment. As a state prisoner, Plaintiff meets the essential eligibility requirements for the receipt of reasonable accommodations in providing a urine specimen for urinalysis testing.

75.     Defendants discriminate(d) against physically disabled prisoners in general, and Plaintiff in particular, by denying reasonable accommodations in order to provide a urine specimen for urinalysis testing.

76.     Defendants discriminate(d) against Plaintiff on the basis of his disability by failing to make reasonable accommodations and/or modifications available to him, thereby denying him an equal opportunity to provide a urine specimen for urinalysis testing, in violation of Section 504 of the Rehabilitation Act, 29 U.S.C. §794, and its implementing regulations, 28 C.F.R. §§ 41.51 and 41.56, as follows:

      a.  The failure of DOCS, Commissioner Fischer, Deputy Commissioner Leclaire, Bartlett, the DOCS ADA Coordinator, Superintendant Perez, the Chief Medical Officer, and the Downstate ADA Coordinator to make available to Plaintiff appropriate medical services so that he may access the services of the medical

staff in order to procure a urine specimen for urinalysis testing in order to avoid the mandatory disciplinary consequences of failing to provide a timely specimen, in violation of Plaintiff's rights protected under Section 504 of the Rehabilitation Act.

b. The policy and practice of all defendants of subjecting individuals with physical disabilities who could not provide a timely urine specimen due to said disability to the same disciplinary procedures and sentences as a nondisabled individual who either refused to provide a specimen or provided a specimen which later tested positive places Plaintiff, and other similarly situated prisoners, at an increased risk of violating the defendants Standards of Inmate Behavior, in violation of Plaintiff's rights protected under Section 504 of the Rehabilitation Act.

c. The failure of the defendants to adequately train and supervise their employees and agents to recognize and accommodate individuals with physical disabilities who require either additional time and/or medical services in order to provide a urine specimen for urinalysis testing, in violation of Plaintiff's rights protected under Section 504 of the Rehabilitation Act.

d. The failure of the defendants to provide Plaintiff, and others similarly situated, with access to additional time and/or medical services in order to provide a urine specimen for urinalysis testing denies Plaintiff, and others similarly situated, equal opportunity and access to obtain the same result as provided to nondisabled prisoners.

e. Due to the defendants' failure to provide reasonable accommodations and/or

modifications to address Plaintiff's disabilities, Plaintiff, and other similarly situated, face(d) a significantly increased risk of being unable, by reason of their physical disabilities, to provide a urine specimen for urinalysis testing and/or avoid the disciplinary consequences of failing to timely do so.

77.     All defendants discriminate(d) against Plaintiff as follows:

a.  Failing to afford Plaintiff benefits and services in a manner that is equal to others and failing to provide Plaintiff with these benefits and services in a manner that is as effective in affording equal opportunity to obtain the same result, gain the same benefit, and reach the same level of achievement as that provided to others, in violation of 28 C.F.R. § 41.51(b)(l)(ii)-(iii); 45 C.F.R. § 84.4(b)(2) and (b)(l)(ii)-(iii); 7 C.F.R. § 15b.4(b)(4)(i)-(iii); and

b.  Using methods of administration that subject Plaintiff to discrimination, in violation of 28 C.F.R. § 41.51(b)(3)(i)-(iii).

78.     As a result of the foregoing, Plaintiff is entitled to recover compensatory and punitive damages against the defendants for said violations, together with attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF THE DUE PROCESS CLAUSE OF THE
## UNITED STATES CONSTITUTION, ACTIONABLE UNDER 42 U.S.C. §1983

79.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "78", inclusive, of this Complaint, as if same were fully set forth herein at length.

80.     As set forth above, Defendants, acting under the color of state law, have violated and continue to violate the liberty and property rights of Plaintiff, as guaranteed by the Due

Process Clause of the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, actionable under 42 U.S.C. § 1983.

81.     Plaintiff's damages were preventable, and he is therefore entitled to recover for the wanton and unnecessary pain and suffering he endured and suffers still, and the injuries he sustained.  Also, Defendants' violations of Plaintiff's constitutional, common law and statutory rights were discriminatory, cruel, malicious, and evinced a total and reckless disregard for his disability, life and rights, thereby entitling Plaintiff to recover punitive damages from Defendants in order to deter such conduct in the future.

82.     As a result of the foregoing, Plaintiff is entitled to recover compensatory and punitive damages against the defendants for said violations, together with attorney's fees, costs, expert's fees, and disbursements pursuant to 42 U.S.C. §1988.

## PENDANT STATE CLAIMS

83.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "82", inclusive, of this Complaint, as if same were fully set forth herein at length.

84.     Plaintiff has satisfied all statutory conditions precedent to commencing the within action.

85.     This action is commenced, including all applicable tolls, within the applicable statute of limitations for the within claims.

86.     This action falls within one or more of the exceptions set forth in New York Civil Practice Law and Rules §1602.

## FIRST CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## VIOLATION OF THE NEW YORK STATE HUMAN RIGHTS LAW

87.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs

"1" through "86", inclusive, of this Complaint, as if same were fully set forth herein at length.

88.     Defendants DOCS, Commissioner Fischer, Deputy Commissioner Leclaire, Bartlett, and Superintendant Perez are each a "person" subject to N.Y. Exec. Law §296(2)(a) in that they are providers of a "place of public accommodation" pursuant to N.Y. Exec. Law §292(9).

89.     As set forth above, Plaintiff has a disability within the meaning of N.Y. Exec. Law §292(21).

90.     Defendants DOCS, Commissioner Fischer, Deputy Commissioner Leclaire, Bartlett, and Superintendant Perez, by refusing, withholding from or denying Plaintiff accommodations, advantages, facilities or privileges because of his disabilities, discriminated against Plaintiff, in violation of Plaintiff's rights under N.Y. Exec. Law §296(2)(a), enforceable under N.Y. Exec. Law §297(9).

## SECOND CLAIM FOR RELIEF UNDER NEW YORK STATE LAW VIOLATION OF THE DUE PROCESS CLAUSE OF THE NEW YORK CONSTITUTION

91.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "90", inclusive, of this Complaint, as if same were fully set forth herein at length.

92.     As set forth above, Defendants have violated the liberty and property rights of Plaintiff guaranteed by the Due Process Clause of Article I, §6 of the New York State Constitution.

## THIRD CLAIM FOR RELIEF UNDER NEW YORK STATE LAW NEGLIGENT HIRING, TRAINING, SUPERVISION AND RETENTION

93.     Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs

"1" through "92", inclusive, of this Complaint, as if same were fully set forth herein at length.

94.   Defendants DOCS, Commissioner Fischer, Deputy Commissioner Leclaire and/or Bartlett, their agents, servants and/or employees, were negligent in the hiring, training, retention, supervision, direction, control, appointment and/or promotion of Defendants, Superintendant Perez, DOCS ADA Coordinator, the Chief Medical Officer, Downstate ADA Coordinator, CO Salazar, Lt. Buys, CO Florio, Lt. Quackenbush and the IGRC Members, in the instance.

95.   Said negligence is evidenced by the defendants' failure to lawfully exercise their employment functions and the reckless lack of cautious regard for the rights of those prisoners in their custody, including the plaintiff herein, and exhibited a lack of that degree of due care which prudent and reasonable individuals would show.

96.   DOCS, Commissioner Fischer, Deputy Commissioner Leclaire and/or Bartlett, their agents, servants and/or employees, were careless and reckless in hiring, appointing, retaining and promoting their employees, agents and/or servants, including but not limited to Superintendant Perez, DOCS ADA Coordinator, the Chief Medical Officer, Downstate ADA Coordinator, CO Salazar, Lt. Buys, CO Florio, Lt. Quackenbush and the IGRC Members, in that said employees lacked the experience and ability to be employed by the State of New York and DOCS; in failing to exercise due care and caution in their hiring, appointment and promotion practices, and in particular, hiring the defendant-employees who lacked the mental capacity and ability to function as employees of said defendants; in that the defendant-employees lacked the maturity, sensibility and intelligence to be employed by said defendants; in that said defendants knew of the lack of ability, experience and maturity of the defendant-employees when they hired them to be an employee; in that said defendants, their agents, servants and/or employees, failed to suspend and/or terminate the defendant-employee(s) when such action was either proper or

required; and in being otherwise careless, negligent and reckless.

97.     DOCS, Commissioner Fischer, Deputy Commissioner Leclaire and/or Bartlett, knew or should have known in the exercise of reasonable care, the propensities of Defendants, Superintendant Perez, DOCS ADA Coordinator, the Chief Medical Officer, Downstate ADA Coordinator, CO Salazar, Lt. Buys, CO Florio, Lt. Quackenbush and the IGRC Members, to engage in the wrongful conduct heretofore alleged in this Complaint.

98.     The aforesaid acts of Defendants, Superintendant Perez, DOCS ADA Coordinator, the Chief Medical Officer, Downstate ADA Coordinator, CO Salazar, Lt. Buys, CO Florio, Lt. Quackenbush and the IGRC Members, resulted in the violation of the plaintiff's constitutional, common law and statutory rights.

99.     The aforesaid acts of Defendants, Superintendant Perez, DOCS ADA Coordinator, the Chief Medical Officer, Downstate ADA Coordinator, CO Salazar, Lt. Buys, CO Florio, Lt. Quackenbush and the IGRC Members, resulted in the plaintiff being caused to experience the constitutional, common law and statutory violations alleged herein, as well as pain and suffering, and was in other respects damaged.

100.    DOCS, Commissioner Fischer, Deputy Commissioner Leclaire and/or Barrett knew or should have known that their directives, policies, customs and practices, as well as their negligent supervision, training, appointment and promotion of their employees, agents and/or servants, including but not limited to Superintendant Perez, DOCS ADA Coordinator, the Chief Medical Officer, Downstate ADA Coordinator, CO Salazar, Lt. Buys, CO Florio, Lt. Quackenbush and the IGRC Members, created an atmosphere where offenders felt assured that their most brazen acts of misconduct would not be swiftly and effectively investigated and disciplined.

101.  That the discrimination and abuse of the plaintiff, as set forth above, were reasonably foreseeable consequences of the defendants' negligent conduct.

102.  By reason of the foregoing, Plaintiff is entitled to an award of compensatory and punitive damages, together with attorney's fees, costs and disbursements.

## FOURTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

103.  Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "102", inclusive, of this Complaint, as if same were fully set forth herein at length.

104.  The aforesaid acts of the defendants, acting individually and/or in conjunction with the other defendants, their employees, agents and/or servants, were intentional, malicious, excessive and served no reasonable or legitimate penological interest.

105.  As a result of the foregoing, Plaintiff suffered physical, psychological and emotional injuries.

106.  The defendants' intentional, reckless, and negligent infliction of emotional and mental distress constituted misconduct of an egregious nature that exceeds all bounds usually tolerated by society.

107.  By reason of the foregoing, Plaintiff is entitled to an award of compensatory and punitive damages, together with attorney's fees, costs and disbursements.

## FIFTH CLAIM FOR RELIEF UNDER NEW YORK STATE LAW
## PRIMA FACIE TORT

108.  Plaintiff repeats, reiterates and realleges each and every allegation of paragraphs "1" through "107 inclusive, of this Complaint, as if same were fully set forth herein at length.

109.   As set forth above, the actions and conduct of the defendants inflicted harm upon the plaintiff, without legal justification, out of disinterested malevolence and discrimination, and were the proximate cause of injuries and damages suffered by the plaintiff.

110.   By reason of the foregoing, Plaintiff is entitled to an award of compensatory and punitive damages, together with attorney's fees, costs and disbursements.

## JURY DEMAND

111.   Plaintiff hereby demands a trial by jury of all issues in this matter.

## RELIEF

WHEREFORE, the plaintiff requests the Court grant the following relief:

a.   Adjudge and declare that the policies, practices, omissions and conditions described above are in violation of the rights of Plaintiff under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, the Due Process Clause of the United States and New York State Constitutions, and the New York State Human Rights Laws;

b.   Declare that the defendants' failure to provide reasonable modifications and/or accommodations for the plaintiff's disabilities violates the ADA and Section 504 of the Rehabilitation Act;

c.   Declare that the defendants' failure to provide their employees and agents with the appropriate information, training, procedures, and supervision violates the ADA and Section 504 of the Rehabilitation Act;

d.   Declare that the defendants' failure to provide Plaintiff with reasonable accommodations for his disabilities discriminates against Plaintiff in violation of the New York State Human Rights Laws and implementing regulations;

e.   Permanently enjoin Defendants, their agents, employees and all persons acting in concert with them, from subjecting Plaintiff, and other similarly situated, to the discriminatory and/or illegal policies, practices, omissions and conditions described above;

f.   Order Defendants, their agents, employees and all persons acting in concert with them, to perform individualized assessments of all prisoners to determine the extent of their abilities to voluntarily comply with DOCS directives and the

reasonable accommodations and/or modifications that they require in order to do so;

g.   Order Defendants, their agents, employees and all persons acting in concert with them, to take all necessary action to provide a full range of options, including medical assistance, to disabled prisoners required to produce a urine specimen for urinalysis testing so that they may be provided an equal opportunity to provide said specimen as other prisoners in DOCS custody;

h.   Order Defendants, their agents, employees and all persons acting in concert with them, to accommodate disabled prisoners by protecting them from any collateral and/or disciplinary consequences resulting from a disabled prisoners' inability to provide a urine specimen for urinalysis testing;

i.   Defendants' conduct was grossly negligent, indicating active malice toward the plaintiff and a total, deliberate and reckless disregard for and indifference to his constitutional, statutory and common law rights, and justifies an award of punitive damages in addition to the actual damages he is entitled to recover;

j.   Award Plaintiff the costs of this suit and reasonable attorneys' fees and litigation expenses, pursuant to 42 U.S.C. §12205; 28 C.F.R. §35.175 (for claims arising under the ADA); 29 U.S.C. §794 (for claims arising under the Rehabilitation Act of 1973); 42 U.S.C. § 1988 (for all other federal statutory claims); and N.Y. C.P.L.R. Art. 86 (for pendent claims arising under state law);

k.   Retain jurisdiction of this case until defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future; and

l.   Award such other and further relief as the Court deems just and proper.

Dated: Brooklyn, New York
       April 1, 2011

                                   Respectfully submitted,

                                   **LAZAROWITZ & MANGANILLO, L.L.P.**

                                   By: _____
                                       Philip M. Hines, Esq. (PH5954)
                                       *Attorneys for Plaintiff*
                                       Office and P.O. Address
                                       2004 Ralph Avenue
                                       Brooklyn, New York 11234
                                       (718) 531-9700
                                       phines@lazmanlaw.com

## ATTORNEY VERIFICATION

PHILIP M. HINES, ESQ., an attorney duly licensed to practice in the courts of the State of New York, hereby affirms the following under penalties of perjury:

I am a member of the law firm of LAZAROWITZ & MANGANILLO, L.L.P., attorneys for the plaintiff in the within action, OWEN IGLESIAS. I have read the foregoing Verified Complaint and know the contents thereof. Same is true to my own knowledge and/or the contents of the file(s) maintained by this office, except as to the matters alleged to be upon information and belief, and as to those matters, I believe them to be true.

The reason this Verification is made by me and not by the aforesaid plaintiff is that said plaintiff resides outside of the County in which the Affirmant's office is located.

PHILIP M. HINES

Affirmed to this 1st
day of April, 2011

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

OWEN IGLESIAS,

                           Plaintiff,              Docket No.

    -against-

BRIAN FISCHER, individually and in his capacity as Commissioner of
New York State Department of Correctional Services, LUCIEN J.
LECLAIRE, JR., individually and in his capacity as Deputy
Commissioner of New York State Department of Correctional Services,
GEORGE BARTLETT, individually and in his capacity as policymaker
of New York State Department of Correctional Services, "JOHN DOE
1", individually and in his/her capacity as New York State Department
of Correctional Services Americans with Disabilities Act Coordinator,
ADA PEREZ, individually and in her capacity as Superintendant of
Downstate Correctional Facility, "JOHN DOE 2", individually and in
his/her official capacity as Chief Medical Officer of Downstate
Correctional Facility, "JOHN DOE 3", individually and in his/her
capacity as Americans with Disabilities Act Coordinator of Downstate
Correctional Facility, CORRECTION OFFICER "JOHN" SALAZAR,
individually and in his official capacity, LIEUTENANT RICHARD
BUYS, individually and in his official capacity as Disciplinary Hearing
Officer of Downstate Correctional Facility, CORRECTION OFFICER
"JOHN" FLORIO, individually and in his official capacity,
LIEUTENANT "JOHN" QUACKENBUSH, individually and in his
official capacity as Disciplinary Hearing Officer of Downstate
Correctional Facility, and "JOHN DOES 4-10", individually and in their
official capacity as Inmate Grievance Resolution Committee Members
of Downstate Correctional Facility,

                           Defendants.
-----------------------------------------------------------------X

## SUMMONS AND VERIFIED COMPLAINT

### LAZAROWITZ & MANGANILLO, L.L.P.
**Attorneys for Plaintiff(s)**
**Office & Post Office Address**
**2004 Ralph Avenue**
**Brooklyn, New York 11234**
**(718) 531-9700**

**Signature (Rule 130-1.1-a)**

**PHILIP M. HINES, ESQ.**
Service of a copy of the within is hereby
admitted.

**Dated: April 1, 2011**